```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
MYRNA MELENDEZ, individually and on behalf                        :
of all others similarly situated,                                 :
                                                                  :         24-CV-9500 (JAV)
                            Plaintiff,                            :
                                                                  :         OPINION AND ORDER
         -v-                                                      :
                                                                  :
R.W. GARCIA CO. INC.,                                             :
                                                                  :
                            Defendant.                            X
---------------------------------------------------------------------
```

JEANNETTE A. VARGAS, United States District Judge:

Plaintiff Myrna Melendez, on behalf of herself and all others similarly situated, brought this action in New York Supreme Court against Defendant R.W. Garcia Co., Inc. ("RW Garcia") for violation of New York General Business Law sections 349 and 350 and for common law fraud. Defendants removed the action to federal court pursuant to 28 U.S.C. §§ 1332, 1441, and 1453. Before the Court is Plaintiff's Motion to Remand to state court. ECF No. 6. The Court GRANTS the motion.

## BACKGROUND

### A.   Allegations in the Complaint

Defendant R.W. Garcia manufactures, labels, markets, packages, distributes, and sells different types of crackers. The crackers vary based on the type of base ingredient. ECF No. 1-2 ("Compl."), ¶ 10. For example, Defendant's products include "Harvest Crackers," which are based on "Pumpkin / Blue Corn / [and a] Trio of Seeds," and sold in packaging depicting an image of a pumpkin along with blue

corn. *Id.* Another of Defendant's products includes "Organic Sweet Potato Crackers," which are sold in packaging displaying a sweet potato and purport to contain flaxseed, black sesame seeds, and chia seeds. *Id.* These two brands of crackers sold under the RW Garcia brand (the "Products") are the focus of this litigation. *Id.*

Plaintiff asserts that "[d]espite the emphasis on pumpkins, blue corn, and sweet potatoes, the fine print ingredients, listed in order of predominance by weight, on the side of each box, reveal the amount of these promoted ingredients is significantly less than expected." Compl., ¶ 11. Plaintiff argues that the labeling, packaging, and marketing of the Products mislead consumers into believing they are consuming crackers of which the purported base ingredient is the predominant ingredient. *Id.* ¶¶ 15-17, 20-27. Plaintiff alleges that the predominant ingredient in the Products is instead yellow corn, which "allows [Defendant] to use relatively small amounts of pumpkin and sweet potato ingredients." *Id.* ¶ 18.

Plaintiff avers that "[s]ubstituting yellow corn for pumpkin, blue corn, and sweet potatoes, is of material interest to consumers, because (1) pumpkin, blue corn, and/or sweet potatoes cost more than yellow corn, (2) pumpkin, blue corn, and/or sweet potatoes contain more, and/or higher quality nutrients than yellow corn, (3) pumpkin, blue corn, and/or sweet potatoes are more appealing and novel ingredients purchasers are seeking out, because they are not used as extensively, as opposed to yellow corn, and/or (4) pumpkin, blue corn, and/or sweet potatoes, have a sweeter and more earthy taste, compared to yellow corn." *Id.* ¶ 25, 30. According to

2

Plaintiff, due to reasons pertaining to nutrients, variety, and taste, "[a] significant percentage of consumers will pay more money for foods, and crackers, containing a predominant and/or relatively significant amount of pumpkin, blue corn, and sweet potatoes, compared to yellow corn." *Id.* ¶¶ 32-33.

Plaintiff Melendez purchased one or both Products between August 2018 and August 2024 at various Whole Foods, including those located in New York County. Compl., ¶¶ 59-60. Plaintiff asserts that she would not have paid more for the Products had she known that "pumpkin, blue corn, and/or sweet potatoes were not the Products' predominant ingredients, nor present in a relatively significant amount, compared to other ingredients." *Id.* ¶¶ 62, 90. For relief, Plaintiff seeks to recover for the economic injury she suffered in paying a price premium based on the misleading labeling and packaging of Defendant's Products. *Id.* ¶¶ 91, 94. Plaintiff defines the price premium as "the difference between what [Plaintiff] paid based on its labeling, packaging, representations, statements, omissions, and/or marketing, and how much it would have been sold for without the misleading labeling, packaging, representations, statements, omissions, and/or marketing identified here." *Id.* ¶ 94.

B.   **Procedural Background**

Plaintiff initiated this suit on September 23, 2024, in the Supreme Court of the State of New York as *Myrna Melendez, individually and on behalf of all others similarly situated, v. R.W. Garcia Co. Inc.*, Index No. 158797 (the "State Court Action"). The Complaint alleges that Defendant have violated New York General

3

Business Law sections 349-350 and common law fraud. Compl., ¶¶ 78-108. Plaintiff also purports to represent a putative class of "[a]ll persons in New York who purchased the Products in New York during the statutes of limitations for each cause of action alleged." *Id.* ¶ 65. Defendant was served on November 12, 2024. ECF No. 1 ("Notice of Removal"), ¶ 3.

On December 12, 2024, Defendant removed this action to federal court, contending that this Court has jurisdiction over this action based on diversity of citizenship under 28 U.S.C. § 1332(a) and the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005) (codified, in part, at 28 U.S.C. § 1332(d)). Notice of Removal, ¶¶ 5, 8-9. Defendant asserts that, pursuant to CAFA, the Court has jurisdiction because the amount in controversy exceeds "the sum or value of $5,000,000 exclusive of interest and costs," and the action is a "class action in which. . . any member of a class of plaintiffs is a citizen of a State different from any defendant." Notice of Removal, ¶ 9 (quoting 28 U.S.C. § 1332(d)(2)). On December 14, 2024, Plaintiff filed a motion to remand the action back to state court, arguing that the amount in controversy with respect to the aggregate claims of the proposed class does not meet CAFA's $5,000,000 requirement and, for Plaintiff's individual claim, the amount in controversy does not meet the $75,000 threshold. ECF No. 7 ("Pl. Br.") at 1-4.

## LEGAL STANDARDS

When a plaintiff brings both individual and class action claims, the Court must consider whether those claims meet the jurisdictional requirements of 28

4

U.S.C. § 1332(a) or 28 U.S.C. § 1332(d), respectively. *Schwartz v. Hitrons Solutions, Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019). Under 28 U.S.C. § 1332(a), a federal court has jurisdiction over an individual's claim as long as all parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000. CAFA "confer[s] federal jurisdiction over any class action involving '(1) 100 or more class members, (2) an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (3) minimal diversity, i.e., where at least one plaintiff and one defendant are citizens of different states.'" *Cutrone v. Mortgage Electronic Registration Systems, Inc.*, 749 F.3d 137, 142 (2d Cir. 2014) (quoting *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006) (citing 28 U.S.C. §§ 1332(d)(2)(A), (5)(B), (6))).

Under 28 U.S.C. § 1332(d)(2)(A), "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which—any member of a class of plaintiffs is a citizen of a State different from any defendant[.]" And under 28 U.S.C. § 1332(d)(6), the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs.

Class actions removed under CAFA may be remanded to the originating state court under the general remand statute, 28 U.S.C. § 1447. The party opposing remand bears the burden of showing that federal jurisdiction is proper and must "show that it appears to a 'reasonable probability' that the aggregate claims of the

5

plaintiff class are in excess of $5 million." *Cutrone*, 749 F.3d at 142 (quoting *Blockbuster*, 472 F.3d at 58) (cleaned up). "In satisfying the reasonable probability burden, there is a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Hart v. Rick's NY Cabaret Intern., Inc.*, 967 F. Supp. 2d 955, 961 (S.D.N.Y. 2014) (citations and quotation marks omitted). "When the complaint fails to allege a specific damages amount, and facts relating to the jurisdictional amount are challenged by the plaintiff, the defendant must establish the requisite amount in controversy with competent proof and justify [its] allegations by a preponderance of evidence." *Smith v. Manhattan Club Timeshare Ass'n, Inc.*, 944 F. Supp. 2d 244, 250 (S.D.N.Y. 2013) (cleaned up). Courts must "look first to the plaintiffs' complaint and then to [defendant's] petition for removal," *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000) (citation omitted), and if "the pleadings themselves are inconclusive as to the amount in controversy . . . courts may look outside those pleadings to other evidence in the record," *United Food & Com. Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994). The Court can consider materials outside the pleadings, including affidavits, to determine whether it has subject matter jurisdiction. *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003).

## DISCUSSION

As an initial matter, Plaintiff concedes that minimal diversity exists and that the purported class contains over 100 members. Pl. Br. at 2 n.1. Plaintiff is a

6

citizen of New York, and Defendant is a Nevada corporation with a principal place of business in California.  Compl., ¶ 51-52.  The Court therefore finds that the class size and minimal diversity prerequisites of CAFA are satisfied, and will focus the jurisdictional analysis on the required amount in controversy under CAFA.

Plaintiff additionally argues that Defendant has failed to offer facts that establish Melendez's individual claim surpasses the $75,000 threshold pursuant to 28 U.S.C. § 1332(a).  Pl. Br. at 4; ECF No. 19 ("Pl. Reply") at 5.  Defendant, in turn, relies on an estimate of Plaintiff's attorney's fees alone to reach the general diversity statute's threshold.  ECF No. 18 ("Def. Opp.") at 4.

Here, the Complaint does not provide a specific damages demand.  The Complaint alleges that "Plaintiff was injured and suffered damages by payment of a price premium for the Products, which is the difference between what she paid based on its labeling, packaging, representations, statements, omissions, and/or marketing, and how much it would have been sold for without the misleading labeling, packaging, representations, statements, omissions, and/or marketing identified here."  Compl., ¶ 94.  The Complaint also specifies that "the Products are sold at a premium price, approximately $5.99 for the 6.5 oz and 5.5 oz boxes of each."  *Id.* ¶ 39.  The Complaint's Prayer for Relief requests that the Court award "monetary damages and interest," "costs and expenses, including reasonable fees for Plaintiff's attorneys and experts," and "other and further relief as the Court deems just and proper."  Compl. at 26.

7

On the Complaint's face, however, the aggregate value of Plaintiff's claims is unclear. Defendant was therefore given the opportunity to establish the CAFA jurisdictional amount in controversy through the submission of its opposition to Plaintiff's Motion to Remand and sworn affidavits. *See* Def. Opp.; *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation."). In opposition to the Motion, Defendant submitted a declaration from David Kwasniewski, counsel of record for Defendant, ECF No. 18-1 ("Kwasniewski Decl."), and a declaration from Deb Holt, the Chief Marketing Officer of R.W. Garcia, ECF No. 18-2 (Holt Decl.). In its brief, Defendant contends that the total amount in controversy — encompassing attorney's fees, the cost of compliance, the statutory damages, and restitution — amounts to a range of $8,050,000 to $11,050,000. Def. Opp. at 9. Having reviewed the evidence submitted by Defendant in addition to the Complaint, the Court finds that Defendant has not shown a reasonable probability that the required amount in controversy threshold has been met.

### A. Attorney's Fees

Defendant asserts that Plaintiff's attorney fees alone will likely exceed $500,000 and therefore meet the general diversity statute's $75,000 threshold. Def. Opp. at 5. Defendant offers an estimate of approximately 475 hours that Plaintiff's lawyer must spend working on this case, including tasks such as conducting discovery and defending a motion for summary judgment. *Id.*; *see also* Kwasniewski

Decl., ¶ 5.  This estimate is based on the "personal knowledge of the rates charged by other law firms in the Bay Area and in New York" of Defendant's counsel.  Kwasniewski Decl., ¶ 3.  Furthermore, Defendant proffers that class certification requires additional significant fees due to additional experts and expert discovery, totaling at least $300,000.  *Id.* ¶ 6.  Defendant appears to categorize these additional class certification fees as part of the attorney's fees calculus, so the Court will treat them accordingly.

The Court rejects the assertions that Plaintiff's attorney's fees should be included in the calculation towards the thresholds of the general diversity statute and CAFA.  Attorney's fees may be counted to "satisfy the amount-in-controversy threshold only 'if they are recoverable as a matter of right pursuant to statute or contract.'" *Schwartz*, 397 F. Supp. 3d. at 366 (quoting *Ryan v. Legends Hospitality, LLC*, No. 11-cv-3110 (RJS), 2012 WL 3834088, at *2 (S.D.N.Y. Aug. 1, 2012)).  New York General Business Law ("GBL") section 349(h) provides that "[t]he court *may* award reasonable attorney's fees to a prevailing plaintiff."  N.Y. Gen. Bus. L. § 349 (emphasis added).  Because attorney's fees are discretionary under the relevant GBL statute, these fees are not recoverable as a matter of right and cannot be included in the calculation of the amount in controversy.  *Schwartz*, 397 F. Supp. 3d. at 367.

Defendant relies on *Pollock v. Trustmark Ins. Co.*, which did not apply the "recoverable as a matter of right" test and instead looked to whether GBL section 349 "explicitly contemplates an award of attorney's fees."  367 F. Supp. 2d 293, 298

9

(E.D.N.Y. 2005). Finding that the statute did "contemplate" an award of attorney's fees, the *Pollock* court included attorney's fees in its calculation of the amount in controversy. *Id.*

This Court declines to follow *Pollock*. The "recoverable as a matter of right" test has its origins in a Second Circuit decision, *Givens v. W.T. Grant Co.*, 457 F.2d 612, 614 (2d Cir. 1972). Although that decision was vacated on other grounds, 409 U.S. 56 (1972), the Second Circuit, in several unpublished decisions, has continued to cite *Givens* as setting the relevant test for the consideration of attorney's fees, *see Suarez v. Mosaic Sales Solutions US Operating Co., LLC*, 720 F. App'x 52, 55 (2d Cir. 2018); *Kimm v. KCC Trading, Inc.*, 449 F. App'x 85, 86-87 (2d Cir. 2012), as have courts within this District, *see, e.g.*, *Bracken v. MH Pillars Inc.*, 290 F. Supp. 3d 258, 268 (S.D.N.Y. 2017); *Cohen v. KIND L.L.C.*, 207 F. Supp.3d 269, 272 (S.D.N.Y. 2016). This Court too will apply the *Givens* test.

Accordingly, the Court excludes Defendant's estimate of $500,000 in attorney's fees from the calculation of the potential amount in controversy.

## B.     Cost of Compliance

Defendant alleges that the "cost of compliance" ranges from $2,000,000 to $5,000,000. Def. Opp. at 6; *see* also Holt Decl., ¶¶ 6-8. Compliance would include R.W. Garcia's efforts to "design and print new packaging for Harvest Cracker and Organic Sweet Potato Crackers, rename the products, and replace the inventory." Def. Opp. at 5. In the alternative, R.W. Garcia would have to "create and implement a new recipe" for the Products before updating the packaging and

10

replacing the inventory. *Id.* 5-6. The Holt declaration alleges that creating and implementing new recipes for both Products would require extensive research and development, new machinery and equipment, and new packaging, and that all of these efforts would amount to at least $3.5 million in costs. Holt Decl., ¶ 6. Designing and printing new packaging for both Products and altering the Products' names would cost at least $50,000. *Id.* ¶ 7. Holt estimates that the cost of replacing the current inventory would surpass $1.5 million. *Id.* ¶ 8.

The "cost of compliance" is not properly counted towards the amount in controversy in this case, however. Defendant's "cost of compliance" theory presupposes that Plaintiff is seeking injunctive relief that would either require it to relabel its packaging or alter its recipe. Def. Opp. at 5-6. Plaintiff, however, made no such request in the Complaint. The Prayer for Relief seeks only an award of monetary damages and interest, as well as costs and expenses. Compl. at 26.

Even if the Complaint could be construed to request injunctive relief, compliance costs would still not figure into the amount in controversy calculation. When determining the value of a request for injunctive relief, courts consider the value of the "object of the litigation." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977). "In the Second Circuit, courts value the object of the litigation from the plaintiff's standpoint; 'the value of the action's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested.'" *Schwartz*, 397 F. Supp. 3d at 366 (quoting *Kheel v. Port of N.Y. Auth.*, 457 F.2d 46,

11

49 (2d Cir. 1972)). "[T]he amount in controversy for jurisdictional purposes should be measured strictly from the plaintiff's perspective, without regard to the amount at stake for any other party." *Leyse v. Domino's Pizza LLC*, No. 04-cv-2411(HB), 2004 WL 1900328, at *3 (S.D.N.Y. Aug. 24, 2004) (cleaned up); *see also Alicea v. Circuit City Stores, Inc.*, 534 F. Supp. 2d 432, 435 (S.D.N.Y. 2008) ("[Defendant's] post-removal argument that costs of compliance may be counted to meet the jurisdictional requirement also is not objectively reasonable because the Second Circuit had held, prior to the filing of this lawsuit, that the value of the claims is measured from the plaintiff's perspective.").

Accordingly, the "value of the requested relief is the monetary value of the benefit that would flow *to the plaintiff* if injunctive or declaratory relief were granted," not Defendant's cost of compliance with an injunction. *Am. Standard, Inc. v. Oakfabco, Inc.*, 498 F. Supp. 2d 711, 717 (S.D.N.Y. 2007) (citation omitted) (emphasis added). The costs Defendant would incur if injunctive relief were granted in this case are not properly included in the amount in controversy. *See Cohen*, 207 F. Supp. 3d at 271 ("[I]n determining the amount-in-controversy, this

Court cannot calculate [defendant's] potential costs of complying with an injunction.").[1]

## C. Statutory Damages

The Court may consider all alleged actual and statutory damages when deciding whether the Complaint satisfies the jurisdictional threshold. *Bardsley v. Nonni's Foods LLC*, No. 20-cv-2979 (NSR), 2023 WL 3570550, at *4 (S.D.N.Y. May 18, 2023) (citing *Schwartz*, 397 F. Supp. 3d at 366). New York law imposes a $50 minimum statutory damages award for violations of GBL section 349 and a $500 statutory minimum damages award for GBL section 350 violations. Defendant asserts that statutory damages here would amount to $550 for Melendez based on her individual claim alone and over $5,500,000 for the entire class if aggregated. Def. Opp. at 6, 9.

What would otherwise be a straightforward mathematical exercise is complicated, however, by New York Civil Practice Law & Rules ("CPLR") section

---

[1] Additionally, Defendant's estimate of $2 million to $5 million in compliance costs is too speculative to meet Defendant's burden. Defendant's estimate is based on a brief affidavit from R.W. Garcia's Chief Marketing Officer without any evidence to support its estimates of $3.5 million and $50,000. *See Schwartz*, 397 F. Supp. 3d at 367 ("A single affidavit with no accompanying documentary support, however, is not conclusive."). Defendant does not even provide a cost breakdown for the research and development, machinery, and new packaging that would compose the estimated $3.5 million. This is insufficient to establish with "reasonable probability" that the jurisdictional amount is met through the cost of compliance. *Compare Bardsley v. Nonni's Foods LLC*, 2022 WL 814034, at *6 (S.D.N.Y. Mar. 16, 2022) (rejecting defendant's argument for relying solely on a two-page affidavit from the Vice President of Sales without any accompanying documentary support), *with Manhattan Club Timeshare Ass'n*, 944 F. Supp. 2d at 250 (relying on sworn affidavit accompanied by supporting documentary evidence).

901(b). CPLR section 901(b) precludes class actions that seek statutory minimum or treble damages. N.Y. C.P.L.R. § 901(b) ("[A]n action to recover a penalty, or a minimum measure of recovery created or imposed by statute may not be maintained as a class action."); *see also Ridge Meadows Homeowners Ass'n v. Tara Dev. Co.*, 665 N.Y.S.2d 361, 361 (N.Y. App. Div. 1997). Yet the Supreme Court has held that, in a federal court diversity action, Federal Rule of Civil Procedure 23 preempts CPLR section 901(b). *Shady Grove Orthopedic Assocs., P.A. v. Allstate Insurance*, 559 U.S 393, 399, 406-07 (2010). In *Shady Grove*, the Supreme Court noted that Rule 23 and CPLR section 901 answer the same question of whether a suit may proceed as a class action. *Id.* at 399. Rule 23 sets forth the criteria by which a class can be certified in a federal diversity action, and Rule 23 does not preclude statutory damages. *Id.* Thus, a class action filed in federal court may recover statutory damages under GBL sections 349 and 350. *See, e.g., Sedhom v. Pro Custom Solar LLC*, No. 17-cv-07559 (ADS)(AYS), 2018 WL 3429907, at *3 (E.D.N.Y. July 16, 2018) ("Rule 23 *automatically* applies in all civil actions and proceedings in the United States district courts."); *In re Scotts EZ Seed Litig.*, No. 12-cv4727 (VB), 2017 WL 3396433, at *6 (S.D.N.Y. Aug. 8, 2017) ("[CPLR] Section 901(b) is no longer valid in federal court after *Shady Grove*."); *Vargas v. Howard*, 324 F.R.D. 319, 331 (S.D.N.Y. 2018).

Defendant contends that *Shady Grove* applies to *all* claims in federal court, including those removed from state court, and, thus, Federal Rule of Civil Procedure 23 preempts section 901(b) to allow statutory damages for class actions. Def. Opp.

14

at 8. Plaintiff counters that, in a removal action, jurisdiction should be assessed at the time of the filing of the notice of removal, thereby distinguishing state law class actions removed to federal court from suits initially filed in federal court. Pl. Reply at 8-10. Arguing that section 901(b) applied at the time of the suit's filing in state court, Plaintiff points to *DiPonzio v. Bank of America Corp*, in which the Court found that damages unavailable to the plaintiff in state court could not be included in the calculation of the amount in controversy once the case was removed to federal court. No. 11-cv-06192 (MAT), 2011 WL 2693912, at *5 (W.D.N.Y. July 11, 2011) ("Because New York law prohibits recovery of liquidated damages in class action suits, no liquidated damages were in consideration at the time of removal.").

The Court that, in the removal context, section 901(b) bars the inclusion of statutory damages in the calculation of the amount in controversy.[2] "[R]emovability is determined from the record as of the time the petition for removal is filed," *United Food & Comm. Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meridien Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994), so it follows that the amount of controversy should be assessed at the time of removal, under state law, *Abdale v. N. Shore-Long Island Health Sys., Inc.*, No. 13-cv-1238 (JS)(WDW), 2014 WL 2945741, at *5 (E.D.N.Y. June 30, 2014). "In calculating the amount in controversy on a motion to remand, courts in this Circuit exclude damages that a plaintiff could not have sought in their state court action." *Ortiz v. Eagle Family Foods Group,*

---

[2] Notably, if removal was otherwise proper and the court had subject matter jurisdiction over a removed state court action, once in federal court, statutory damages would be available as a remedy pursuant to *Shady Grove*.

15

*LLC*, No. 24-cv-09861 (JLR), 2025 WL 951089, at *3 (S.D.N.Y. Mar. 28, 2025) (listing cases). And in the instant case, the Complaint does not seek any statutory or treble damages because "[Plaintiff] would have been unable to maintain a state-court class action pursuant to [] (C.P.L.R.) § 901(b)," Pl. Reply at 11 (quoting *Ramirez v. Oscar de la Renta, LLC*, No. 16-cv-7855 (RA), 2017 WL 2062960, at *6 (S.D.N.Y. May 12, 2017)).

The court's reasoning in *Ortiz* is particularly instructive as it addressed precisely the same question. 2025 WL 951089, at *3. There, the court rejected the defendant's reliance on *Shady Grove* because, in all of the cases cited in support of the inclusion of statutory damages in the amount in controversy, the plaintiffs had first brought their claims in federal court—not state court. *Id.* The *Ortiz* Court instead found *DiPonzio* to be persuasive as its holding aligned with other decisions in this Circuit that distinguished removed class actions from those initially filed in federal court. *Id.* at *4 (citing *Ramirez*, 2017 WL 2062960, at *6, and *Alicea v. Circuit City Stores, Inc.*, No. 07-cv-6123 (DC), 2008 WL 170388, at *1 (S.D.N.Y. Jan. 22, 2008)). *Ortiz* reasoned that, because jurisdiction is determined at the time of removal, the amount of controversy must be assessed under the applicable state law, section 901(b). *Ortiz*, 2025 WL 951089, at *4.

Here, too, *Shady Grove* does not have any bearing as the jurisdictional analysis hinges on a question of timing—at the moment this case was pending in state court, prior to its removal, what was the amount in controversy? "Because Plaintiff did not (and could not) seek statutory minimum damages or treble

16

damages in [her] class action filed in state court," *Ortiz*, 2025 WL 951089, at *3, the Court must exclude Defendant's estimate of $5,500,000 in statutory damages from the amount in controversy.

**D.     Restitution**

Lastly, Defendant claims that "Plaintiff and the putative class "seek . . . full restitution." Notice of Removal, ¶ 13; *see also* Def. Opp. at 8. But Plaintiff is correct in pointing out that she never requested restitution in the Complaint. Pl. Br. at 10-11; Pl. Reply at 5. She further clarifies that she seeks "price premium" damages, which are not the same as a refund of the purchase price. Pl. Br. at 10-11. Accordingly, the Court does not include full restitution as part of the amount in controversy. *Cf. Patterson v. Sapphire Resorts*, 23-cv-2916 (NJC)(SIL), 2024 WL 5010152, *4 (E.D.N.Y. Nov. 20, 2024) ("Plaintiff's Amended Complaint does not seek punitive damages, and his allegations do not support an inference that punitive damages are appropriate. Therefore, the Court recommends that punitive damages not be considered in the amount-in-controversy analysis.").

## CONCLUSION

Because Defendant does not provide any other categories of costs that should be included in the amount of controversy, Defendant fails to meet its burden of establishing that the amount in controversy exceeds the necessary $5,000,000 threshold under CAFA, or $75,000 with respect to the individual claim. Accordingly, Plaintiff's Motion to Remand is GRANTED.

IT IS ORDERED that this proceeding be remanded to Supreme Court of the State of New York, County of New York. The Clerk of the Court is respectfully directed to close this case and terminate all pending motions.

SO ORDERED.

Dated:  April 28, 2025  
       New York, New York                         _____  
                                               JEANNETTE A. VARGAS  
                                               United States District Judge